Filed 12/16/24  P. v. Sims-Cruz CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C100306 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE011556) |
| v. | |
| JONATHAN ANTHONY SIMS-CRUZ, | |
| Defendant and Appellant. | |

Defendant Jonathan Anthony Sims-Cruz was convicted of stalking and the trial court found that he had a prior strike conviction.  He challenges his conviction, contending the trial court erred by failing to instruct the jury it had to unanimously decide which alleged acts he committed for the purposes of stalking.  He also contends the trial court abused its discretion in denying his motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.  We affirm.

1

## LEGAL AND FACTUAL BACKGROUND

J. Doe is defendant's wife. In 2021, their relationship became tumultuous and abusive and when Doe told defendant she was leaving, he set their Christmas tree on fire. Doe unsuccessfully tried to extinguish the fire but was ultimately forced to flee with her daughter, leaving behind her two dogs who died. Defendant threatened to kill her if she said he caused the fire. Doe initially lied to fire investigators about the source of the fire. A few days later, when she told defendant she would not continue to lie about the causation of the fire, he choked her until she passed out. Doe eventually met with the fire investigators and told them that defendant had started the fire. She also reported defendant's assault to law enforcement.

Thereafter, Doe stayed with defendant off and on at various places. As Doe described it, "I did not want to be with him, and I made it very clear. But he won't go away, and nobody makes him." The following incidents involve periods of time where they lived separately.

In early 2023, defendant discovered where Doe was residing, tried to push his way into her residence, and threw a rock through a window of the residence. The rock struck her shoulder and neck. Defendant fled before the police arrived.

A few months later, Doe began to receive text messages from unidentified phone numbers that read, "I'm going to kill you. I'm going to destroy your life. I'm going to dog-walk you." She believed those messages were sent by defendant.

On July 5, 2023, after Doe had moved to a different residence, defendant came to her door. When she opened her front door to exit, defendant was standing in front of it and he pushed his way inside, grabbed her purse and walked around with it before he "shoved it back" at her and left. When Doe later examined her purse, she discovered that some valuables were missing, including check cards and a smart watch. She did not report the incident to the police. At some point, Doe saw a video on Facebook in which

2

defendant and his new girlfriend are heard singing, "I'm going to kill my ex." Doe saw that defendant had her valuables that were missing from her purse.

In the early morning hours of July 11, Doe awoke to the sounds of shattering glass and a man yelling. Her home's front window was broken. She went outside and saw that her car windows were also broken. Her neighbor told her it was "the same guy . . . that she saw before, came over when I was upset." Doe recognized defendant from a neighbor's video surveillance.

On July 18, defendant returned to Doe's home holding a baseball bat. He pounded on the door and demanded entry. Doe called the police.

A jury found defendant not guilty of vandalism for breaking Doe's window on July 11 (Pen. Code, § 594, subd. (a))[1] (count one) but guilty of stalking Doe between July 5 and July 18, 2023 (§ 646.9, subd. (a)) (count two).

After a court trial on aggravating sentencing factors, the court found true the allegation that defendant suffered a prior strike conviction. (§§ 667, subds. (b)-(i), 1170.12, 1192.7, subd. (c).) The court also found defendant had served a prior prison term and that his prior convictions were numerous. The court denied defendant's *Romero* motion and sentenced defendant to the midterm of two years, doubled to four years for the strike prior.

## DISCUSSION

### I

*Unanimity Instruction for Stalking*

Defendant contends the trial court violated his state and federal due process rights by failing to give the jury a unanimity instruction (CALCRIM No. 3500) on which acts out of the series of events in July constituted the continuous course of conduct necessary

---

[1]     Undesignated statutory references are to the Penal Code.

for a stalking conviction.  According to defendant, because he was acquitted of the vandalism charge and that formed the basis for one of the three alleged events, there was at least one incident on which the jury was not unanimous and the failure to provide unanimity instructions was prejudicial error.  The People argue that because the stalking statute requires proof of a continuous course of conduct, no unanimity instruction was required.  We agree with the People.

**A.  Additional Background**

Defense counsel requested instruction on unanimity as to the charge of stalking using CALCRIM No. 3500.  Citing *People v. Zavala* (2005) 130 Cal.App.4th 758, 769 (*Zavala*), the court sustained the prosecution's objection and refused the instruction.  However, the court inadvertently instructed the jury on CALCRIM No. 3500 and included the instruction in the packet of jury instructions.

During summation, the prosecution argued that two or more instances of harassment constituted a course of conduct sufficient to find defendant guilty of stalking and that the course of conduct in this case was established by "three specific occasions" that took place on July 5, July 11, and July 18, 2023.

During deliberations, the jury asked whether one act was sufficient for stalking where, referring to the instruction packet, "[p]age 27 states one act, however, we recall being instructed it had to be two acts."  The court responded:  "The jury instruction 3500 on page 27 of your instructions packet was provided to the jury in error and has now been removed by the Court.  The instruction that applies to count 2 specifically is 1301, found on page 24 of your new packet."

Less than one-half hour later, the jury acquitted defendant of vandalism but convicted him of stalking.

**B.  Analysis**

"We review a claim of instructional error de novo."  (*People v. Rivera* (2019) 7 Cal.5th 306, 326.)

4

A criminal defendant has the constitutional right to be tried by a fair and impartial jury. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 16.) That right further requires a jury's unanimous verdict to support a conviction, whether in federal or state courts. (*Ramos v. Louisiana* (2020) 590 U.S. 83, 90; *People v. Jones* (1990) 51 Cal.3d 294, 321 ["the requirement of unanimity in criminal cases is of constitutional origin"].)

There are well established exceptions to the unanimity instruction requirement. For example, there "is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) Also, "no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time.' " (*Ibid*.) "Cases applying the continuous conduct exception have generally relied on statutory interpretation to justify a conclusion that the nature of the crime is ongoing." (*People v. Thompson* (1984) 160 Cal.App.3d 220, 225.)

Defendant contends that there were different defenses to the identified events in July and, therefore, a unanimity instruction was required. As noted above, the same-defense exception is only one exception to the unanimity requirement. (See *People v. Jennings, supra*, 50 Cal.4th at p. 680 [noting course of conduct exception is separate from the same-defense exception].) If we conclude the stalking statute described in section 646.9 contemplates a continuous course of conduct or a series of acts over a period of time, the statutory exception applies.[2] We have no difficulty concluding that it does. Section 646.9 punishes "[a]ny person who willfully, maliciously, and repeatedly follows

---

[2]    Defendant's attempt to rely on *People v. Hernandez* (2013) 217 Cal.App.4th 559, is unavailing because that case did not involve statutes that contemplated a continuous course of conduct. (*Id*. at p. 572.)

or willfully and maliciously harasses another person . . . ."  (§ 646.9, subd. (a).)  The statute defines " 'harasses' " as, among other things, engaging "in a knowing and willful course of conduct directed at a specific person."  (§ 646.9, subd. (e).)  " '[C]ourse of conduct' " is defined as "two or more acts occurring over a period of time, however short, evidencing a continuity of purpose."  (§ 646.9, subd. (f).)  The Legislature could not have made it clearer that section 646.9 punishes not a single act, but a course of conduct.  Indeed, in *Zavala, supra*, 130 Cal.App.4th 758, the court squarely held that stalking is the type of course of conduct offense for which no unanimity instruction is necessary and we agree with that court's reasoning.  (See *id*. at p. 769.)

Defendant urges us to refrain from embracing the holding in *Zavala* and to instead determine that his is a rare case in which a unanimity instruction is required.  He contends that because the prosecution sought to convict him of stalking based on "three separate incidents" in July, there was a danger that the jury did not unanimously agree on the incidents that defendant committed.  That same argument was expressly rejected in *Zavala*.  (See *Zavala, supra*, 130 Cal.App.4th at pp. 768-769.)  The court explained that when a "statutory offense contemplates a continuous course of conduct by a series of acts over a period of time," "there is no need for a unanimity instruction as to individual acts within the course of conduct, because the jury need only agree on whether the defendant committed acts the net effect of which constitutes the statutory offense."  (*Id*. at p. 769; see also *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1198 [following *Zavala*; since the Legislature defines stalking as a crime requiring a continuous course of conduct over a period of time, no unanimity instruction was required]; *People v. Jantz* (2006) 137 Cal.App.4th 1283, 1293 [following *Zavala*; unanimity instruction not required for stalking, which consists of one continuous course of conduct and therefore constituted a single offense].)

Nevertheless, defendant contends that, unlike in the instant case, *Zavala* involved a close connection between the acts in time, nature, and intent where, on many instances,

6

Zavala threatened to harm the victim.  He argues his case has no such connection because the three incidents involve distinct behavior:  theft, alleged vandalism, and loitering with a baseball bat.  We disagree with defendant's implicit contention that a defendant must harass another in one specific manner for purposes of violating the stalking statute.  (See *People v. Heilman* (1994) 25 Cal.App.4th 391, 399 [substantial evidence to support a stalking conviction based on a harassment theory where the defendant made frequent unwarranted calls, appeared at the victim's workplace, left threatening notes on the victim's car, displayed violent behavior, placed super glue on the victim's car].)  And, as concluded in *Zavala*, "the jury need only agree on whether the defendant committed acts the net effect of which constitutes the statutory offense."  (*Zavala, supra*, 130 Cal.App.4th at p. 769.)

Moreover, defendant's attempt to factually distinguish *Zavala* is unavailing because the basis for the *Zavala* court's ruling was a matter of law and not based on the specifics of Zavala's conduct.  (*Zavala, supra*, 130 Cal.App.4th at pp. 768-769.)  Whatever the facts underlying Zavala's act of stalking, the court held that:  the statutory offense of stalking is self-defined to require a course of conduct and as Zavala was charged with a course of conduct over a period of time, as a matter of law, these circumstances constitute an exception to the unanimity instruction requirement.  (*Ibid*.)  This conclusion is logical because the actus reus of a continuous course of conduct crime is not a specific act, but rather a series of acts occurring over a substantial period of time, generally on the same victim, and generally resulting in cumulative injury.  (*People v. Whitham* (1995) 38 Cal.App.4th 1282, 1296.)  Thus, when a defendant is prosecuted for offenses statutorily defined as continuous course of conduct offenses, the issue presented to the jury is whether a defendant committed a course of conduct and not whether he or she committed a specific act on a specific day.  (*People v. Higgins* (1992) 9 Cal.App.4th 294, 301.)  The agreement required for conviction is unanimous assent that the defendant engaged in the criminal course of conduct.  (*Ibid*.)

There being no instructional error, we need not address the issue of prejudice.

II

*Romero Motion*

Defendant contends the trial court abused its discretion by denying his *Romero* motion to strike his prior conviction. He contends that the circumstances of his prior strike and current offenses as well as his background place him outside the spirit of the law. We disagree.

**A. Additional Background**

Prior to sentencing, defendant filed a motion to strike his prior strike in the furtherance of justice pursuant to section 1385 and *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th 497. In both the written motion and at the hearing, defendant argued that the instant offense, a wobbler, was relatively minor as he did not directly threaten or inflict harm on Doe. Defendant also emphasized his troubled childhood, beginning with the fact that defendant was born addicted to drugs to a mother who was hospitalized for psychiatric reasons. His home life was unstable, and he was placed in foster care at age 13. He bounced around foster care yet managed to earn a general education development (GED) certificate. Although defendant acknowledged he became involved in the criminal justice system when he was a teenager, he argued that most of his criminal history involved property and drug crimes and was nonviolent. With respect to his strike prior, defendant noted that there had been a significant time lapse since his conviction; while the conviction itself was from 2017, it stemmed from nonviolent conduct occurring in 2015. Finally, defendant argued that he had been addicted to methamphetamine since he was 19 years old, which was compounded by the fact that he suffered from largely untreated mental illness.

The prosecutor opposed the motion, arguing "the Defendant has seven prior criminal convictions that are felonies, an additional six that are misdemeanors." Although the prosecutor recognized defendant's last conviction was in 2017, he noted

8

that defendant violated his felony probation in that case on two occasions and was twice found to be in violation of his parole on that case. The prosecutor also argued that his strike conviction under section 186.22, involved pimping women. According to the prosecutor, the instant conviction for stalking revealed a steady attitude of exploitation or victimization of women.

In denying defendant's *Romero* motion, the court stated that it considered defendant's prior conviction for pimping and pandering where, "[t]he victim in that case said that she was physically abused by the Defendant as well as emotionally abused by him. There is a 243[, subdivision ](b)(1) in 2014. He was convicted of the gang — street gang participation in 2017 and did not go to prison until after he violated his probation later, which appears to be just six months after he was — I'm sorry, nine months after he was convicted. And then he had two subsequent parole violations after that." Looking at "the sheer number of criminal convictions," since 2002 "the Defendant appears to be unrelenting in his criminal activity." The court also stated, "I have empathy for the Defendant's previous history. No one should have to go through what he went through," but there was nothing in this case that provides reason to believe the instant crime was caused by his upbringing or his addiction. "What caused this crime was his animus towards the victim in this case. . . . He did everything he could to terrorize her and make her feel uncomfortable and unsafe . . . I think this is exactly the kind of Defendant that the three-strikes law was designed to punish more severely when their criminal conduct goes undeterred."

### B. Analysis

When deciding whether to dismiss a prior strike allegation, a trial court determines whether the defendant falls outside the spirit of the "Three Strikes" law. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) To make this determination, the trial court considers (1) the nature and circumstances of the present felony, (2) the nature and circumstances of the prior strike offenses, and (3) the particulars of the defendant's

9

background, character, and prospects for the future. (*Ibid.*) The trial court is not required to state reasons for declining to strike a prior and, in the absence of evidence to the contrary, we presume that the trial court considered all of the relevant factors and properly applied the law. (*In re Large* (2007) 41 Cal.4th 538, 550-551.)

We review a decision declining to dismiss a prior strike allegation for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) A trial court abuses its discretion when it refuses to strike a prior felony conviction only in limited circumstances, such as where the court is unaware of its discretion to dismiss or considers impermissible factors in refusing to dismiss, or if the sentencing norm under the Three Strikes law leads, as a matter of law, to an arbitrary, capricious, or patently absurd result under the circumstances of the individual case. (*Id*. at p. 378.)

Additionally, the burden is on the party attacking the sentence to show that the sentencing decision was irrational or arbitrary. (*People v. Carmony, supra*, 33 Cal.4th at p. 376.) Only in the "extraordinary case — where the [*Williams* factors] manifestly support the striking of a prior conviction and no reasonable minds could differ," will the failure to strike constitute an abuse of discretion. (*Id*. at p. 378.) An appellate court may not substitute its judgment for that of the trial court. (*Id*. at p. 377.)

Defendant claims the court "touched on [his] background but apparently did not give weight to his family issues that began literally at birth." We disagree with this characterization. The court considered defendant's traumatic youth and expressed great empathy for defendant. The court found, however, that defendant was unrelenting in his criminal activity for over 20 years and, given the nature of the current offense that included doing "everything he could to terrorize [Doe] and make her feel uncomfortable and unsafe," as well as the age of and probationary and parole compliance associated with the prior strike offense, defendant fell within the spirit of the Three Strikes law. These statements indicate the trial court understood its discretion and identified the

various facts that informed its finding that defendant fell within the spirit of the Three Strikes scheme. On this record, we cannot say the court abused its discretion.

**DISPOSITION**

The judgment is affirmed.

/s/
_____
EARL, P. J.

We concur:

/s/
_____
MESIWALA, J.

/s/
_____
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.